Opinion
 

 GARDNER, P. J.
 

 In this case we hold that a defendant who has served one year in jail as a condition of probation and who thereafter violates probation may be sentenced to an additional period of up to one year in
 
 *185
 
 jail if he knowingly and intelligently waives the provisions of Penal Code section 2900.5.
 

 Facts
 

 Convicted of receiving stolen property, defendant was placed on probation on condition that he serve one year in jail. He served that term.
 
 [1]
 
 He was then violated for having committed grand theft. Through his attorney, he suggested that additional jail time be considered. The court declined to consider additional jail time on the basis that it had no authority to do so. The defendant was then sentenced to prison.
 

 Discussion
 

 In pertinent part, Penal Code section 19a provides that a defendant may not be sentenced to jail for more than one year as a condition of probation. Penal Code section 2900.5 provides in pertinent part that all days in custody be credited on a jail sentence including any period of imprisonment imposed as a condition of probation.
 

 The net result of these two legislative efforts is that if a defendant has served a year in jail as a condition of probation, a violation means either a prison sentence or a fatherly (or motherly) lecture on the evils of crime. This reveals a legislative naivete concerning the administration of criminal justice which is usually attributed to justices of reviewing courts.
 

 The legislative history of these statutes (1 Cal. Law Revision Com. Rep. (1957) pp. A-5-6) reveals that their enactment was on the basis that jails do not have adequate facilities for rehabilitation and that serving more than one year in jail does not benefit the prisoner but may be actually harmful to him.
 
 [2]
 
 This apparently presupposes that the service of longer sentences in prison will rehabilitate because prisons do have facilities for rehabilitation.
 

 
 *186
 
 For several decades, the Legislature and the courts operated on the shaky principle that a person could be put into a cage and there force-fed psychiatrically oriented rehabilitative and therapeutic programs and emerge from that cage “cured” of his antisocial proclivities. Experience has finally persuaded us that this is pure balderdash. Nevertheless, mesmerized by this concept, judges throughout the years have imposed some perfectly ghastly prison sentences on the assumption that rehabilitative programs in the prison were going to cure or rehabilitate the prisoners. That philosophy was the basis for the Indeterminate Sentence Law. Under that law, prisoners were sentenced until “cured.”
 

 This is not to say that all of the rehabilitative programs in prison are a waste of time. Far from it. There are excellent academic programs by which prisoners are exposed to at least the basic tools of education. So, too, are training programs by which prisoners learn a craft
 
 [3]
 
 or trade so that on release they may at least secure and, hopefully, hold a job.
 

 So, too, it should be pointed out that time in jail does not necessarily mean that the prisoner sits in a cell in futile contemplation of his navel. It is true that because of the shifting population of a jail—in which the average sentence is under 30 days—full-fledged and comprehensive therapeutic programs are seldom workable. Nevertheless, many counties have honor farms and forestry camps and almost without exception there are trusty programs in which prisoners leave the jail during the day to work on county projects. Many prisoners are on work furlough. In addition, dedicated individuals present therapeutic programs such as Alcoholics Anonymous in most jails. If a prisoner simply sits his time out in a cell, it is usually because that is his choice or he is so recalcitrant that he cannot be trusted in any of the more productive programs available.
 

 However, in spite of what we have said as to the failure of prisoners to rehabilitate, we cannot say that incarceration per se is utterly without value. It is not. Approached honestly, it simply says to the malefactor that there is an unpleasant result (loss of liberty) from an antisocial act. This knowledge obviously has some therapeutic value. It also should have some deterrent effect. Of course, this presupposes some certainty of punishment—which observation is perhaps a trifle naive.
 

 
 *187
 
 Incarceration has the additional value of putting the malefactor in a secure place with the knowledge that for a certain period of time at least, innocent persons and the social fabric are protected from his antisocial behavior. This concept is inelegantly—but with a certain touch of intellectual honesty—referred to as “warehousing.” It is frowned upon in the better correctional, legislative and judicial circles, yet it exists. Based upon this realistic approach, the vicious, the assaultive and the dangerous criminals—the rapists, the armed robbers, the kidnapers, the murderers —are put in prisons for substantial periods of time, not with any belief that they are being cured of their antisocial proclivities while in custody but simply to protect the rest of the public from them while they are locked up.
 

 This new awareness of the failure of rehabilitative prison programs has, in the last few years, led to some basic changes in sentencing practices. Prisons are now crowded with the assaultive, the dangerous, the vicious, the depraved—on determinate sentences. However, more and more, those prisoners who don’t fit these categories are being handled on the local level. Many of these defendants are offenders against property of the so-called nuisance category—typified by alcoholic checkwriters, chronic car thieves, junkies feeding their habits by theft and those traditionally unsuccessful burglars whose most ambitious crimes are knocking over service stations for the purpose of getting money out of cigarette machine cash boxes. There is nothing very funny about these criminals. Their offenses against property are serious to their victims and to society but local time is just as effective and considerably more humane than prison sentences. Many of these defendants get a year as a condition of probation. Then, when they violate probation, the court is faced with the Hobson’s choice of the “joint” or a “straight walk.” This denies to the court a useful and realistic sentencing tool and is often grossly unfair to the defendant. Many of them simply need additional time in jail to dry out. Many of them need some additional time in jail to bring home the realization that being on probation means more than just sending in a monthly report—in other words that probation has some teeth. However, many do not actually deserve prison.
 

 Justice Bernard Jefferson in his concurring, opinion in
 
 In re Chamberlain,
 
 78 Cal.App.3d 712 [144 Cal.Rptr. 326], recently articulated the concept that Penal Code section 2900.5 could be interpreted as “. . . permitting a defendant to knowingly and intelligently waive the provi
 
 *188
 
 sions thereof that require all days of custody to be credited to his sentence, including any period of imprisonment as a condition of probation.” (At p. 720.) However, the majority chose to decide the case on another ground. Thus, Justice Jefferson’s observations failed by lack of one vote from becoming controlling law.
 
 [4]
 
 We simply adopt Justice Jefferson’s concept as law. We hold that a proper interpretation of Penal Code section 2900.5 permits a defendant to knowingly and intelligently waive the provisions thereof that require all days of custody be credited to his sentence, including any period of imprisonment as a condition of probation. Thus, we conclude that where a defendant who has spent a year in the county jail as a condition of probation subsequently commits a probation violation, the sentencing judge should not be forced to choose between ignoring the violation or imposing sentence to state prison. The court should be free to choose either of these options in the exercise of its discretion but it should also have the power, with the consent of the defendant, to fashion an intermediate disposition by modifying probation to provide for additional time up to one year in jail.
 

 Since at the time of the imposition of sentence in this case this concept had not become law and since the court declined to consider the possibility of local time, the imposition of the state prison sentence will be set aside in order that the court be afforded that opportunity in view of the request by defense counsel for “a period of time on the local level.”
 

 There is nothing dramatic or earth-shaking about this holding. There will be no dancing in the streets or torchlight parades. The number of times this concept will be utilized may be extremely limited. It is simply a realistic interpretation of Penal Code section 2900.5 by which in the proper case a trial judge, with the consent of the defendant, may formulate a sentence which fits the crime and the criminal.
 

 Although we remand for sentencing, nothing that we have said should in any way be construed by the trial judge as expressing any opinion on the propriety of the defendant’s prison sentence. We merely hold that the trial judge should have considered the possibility that after a knowing
 
 *189
 
 and intelligent waiver of the provisions of Penal Code section 2900.5, additional jail time could be considered.
 
 [5]
 

 Defendant’s other contentions do not deserve discussion in a published opinion and were we afforded the luxury of partial publication, we would simply dispose of them by written memoranda to counsel. However, since partial publication is not available to us, we dispose of these issues in summary form. The issues are:
 

 (1) That the evidence is insufficient to show that the value of the stolen property was over $200. Not so.
 

 This matter was submitted on a police report which showed the value of the stolen property to be in excess of $1,000.
 

 (2) That the evidence is insufficient to show that the victim did not consent to the taking of the property. Again, we disagree.
 

 The police report shows that the victim reported the property as stolen.
 

 (3) That the record does not affirmatively show that the court used the correct standard of proof for a probation violation, i.e., clear and convincing evidence.
 

 There is no indication to the contrary and we presume the court followed the law properly.
 

 (4) That it was error for the judge who sentenced the defendant not to have heard or reviewed the evidence presented at the violation hearing.
 

 There is no such requirement.
 

 (5) That trial counsel was inadequate for not having raised items (1) to (4) above.
 

 
 *190
 
 Since the contentions are without merit, trial counsel was not inadequate for his failure to raise them.
 

 (6) That when the district attorney asked a defense witness at the revocation hearing about his connection with the thefts, the court was exposed to prejudicial evidence.
 

 The inquiry was proper.
 

 Judgment of conviction affirmed; matter remanded for resentencing.
 

 Tamura, J., and Kaufman, J., concurred.
 

 Appellant’s petition for a hearing by the Supreme Court was denied September 20, 1978.
 

 [1]
 

 He did not actually serve a full year, but we will, for the purposes of our discussion, consider that time as having been served. It cannot be realistically assumed that the judge would have been satisfied to commit the defendant to jail for the remaining few days for this serious violation of probation.
 

 [2]
 

 This legislative history makes it clear that these statutes were enacted for the benefit of prisoners not to satisfy any other overriding social, political or fiscal purpose.
 

 [3]
 

 This court had before it recently a case in which a normal, run-of-the-mill burglar had been sent to prison. While in prison, he took a course in welding and learned how to handle an acetylene torch. On his release, he became a safe burglar.
 

 [4]
 

 In
 
 People
 
 v.
 
 Meyers,
 
 77 Cal.App.3d 732 [143 Cal.Rptr. 686], the court also recognized the possibility of waiver of the provisions of Penal Code section 2900.5, but, again, decided the case on another ground.
 

 [5]
 

 It is entirely possible that this matter has certain aspects of mootness since the defendant may well have been paroled from his three-year term for receiving. Nevertheless, as he points out, under the new Determinate Sentence Law, prior offenses have significance only where a defendant has served time in prison. (Pen. Code, § 667.5.) Therefore, he should be entitled to consideration of his request that his prison commitment be set aside even though the trial court could not at this point impose any additional time in custody. The collateral consequences would indicate that the issue is not moot. (Cf.
 
 Sibron
 
 v.
 
 New York,
 
 392 U.S. 40 [20 L.Ed.2d 917, 88 S.Ct. 1889]; Witkin, Cal. Criminal Procedure (1975 Supp.) pp. 806-807.)